Stephen W. MYATT,
Petitioner, Appellant,

v.

UNITED STATES of America,
Respondent, Appellee.

No. 88–1912.

United States Court of Appeals,
First Circuit.

Heard Feb. 9, 1989.
Decided May 23, 1989.

Robert L. Sheketoff with whom Zalkind, Sheketoff, Homan, Rodriguez & Lunt, Boston, Mass., was on brief for petitioner, appellant.

F. Mark Terison, Asst. U.S. Atty., Portland, Me., with whom Richard S. Cohen, U.S. Atty., Augusta, Me., was on brief for the U.S.

Before CAMPBELL, Chief Judge, TORRUELLA and SELYA, Circuit Judges.

TORRUELLA, Circuit Judge.

Stephen Myatt was convicted by a jury of armed bank robbery and conspiracy, in violation of 18 U.S.C. §§ 2113(d), 371 and 372. He appeals the district court's denial, without a hearing, of his motion under 28 U.S.C. § 2255 to vacate his conviction and sentence.

A careful recitation of the facts in this case is necessary to its understanding. The government's case against Myatt consisted almost exclusively of the testimony of Richard Bellino ("Richard"), who testified pursuant to a plea agreement with the government. Richard testified that his brother, Joseph Bellino ("Joseph") had in-

formed him that Joseph, Myatt, William Baranow, and two other men known only at that time as Frank and John (they were later identified as Frank Bolduc and John McGrath) were going to rob a local bank. Joseph asked his brother to case the bank on Mondays and Thursdays between 11:00 a.m. and noon, which is when the armored car deliveries to the bank were regularly made. Joseph also told Richard that the other four men had also been casing the bank.

Richard also testified that approximately two weeks before the robbery Baranow had driven a brown Buick Skyhawk to Richard's house and asked if the car could be kept there. Baranow told Richard that the car had been stolen and that it would be used during the bank robbery. At some point, Joseph told Richard that on the morning of the robbery, Baranow, Frank, and John would pick up the car and take it to the bank where Frank and John would commit the actual robbery. They would be wearing disguises and one would be dressed as a woman. Baranow would wait in the car and act as a lookout, while Myatt, who would drive another car to the bank, also would act as a lookout.

On the morning of the robbery, all of the men arrived at Richard's house. Myatt drove up in a Ford Thunderbird. Richard testified that Baranow drove off in the Buick Skyhawk with two other men.

Four bank employees, as well as an employee of a local business, testified as to the robbery itself. At approximately 11:30 a.m., two men entered the bank carrying handguns. Both men were disguised, one as a woman. The men asked where that morning's armored car delivery was located and left with the money as well as two hidden dye packets. They ran out of the bank into a waiting vehicle.

After a few moments, the dye packets exploded, forcing the robbers to abandon the car that they were in: a brown Buick Skyhawk that was later identified as the same car that had been kept at Richard Bellino's house. They were picked up by another car.

A bank employee testified at trial that on the Thursday morning prior to the robbery she had seen a car outside of the bank, whose occupants were carefully observing the bank and its attendant activities. Thinking that the bank was being cased, she wrote down the car's description and license plate. Upon a check of the license plate, it was discovered that it was Myatt's car.

Prior to trial, Myatt requested government disclosure of all information pertaining to his identification. Although the record is unclear, it appears that the government informed Myatt two weeks before the start of the trial that four bank employees were shown photographic lineups, from which they failed to make any identifications. The government also furnished two of the four photographic arrays, which contained pictures of Baranow and Joseph Bellino. Apparently, there had been four photograph lineups compiled by the FBI agent working on the case, containing pictures of McGrath, Bolduc, Baranow, and Bellino. The agent had since passed away and therefore detailed information on these pictures was unavailable, but both parties agree that Myatt's photograph was not used in any of the arrays. No witness at trial identified Myatt from a photograph and Myatt's attorney cross-examined the bank employees about the photograph lineups that they had been shown and about their failure to make any identifications.

Also, the government failed to disclose to Myatt three FBI reports. The reports concerned fingerprints, a palm print, and hair samples that were retrieved in connection with the robbery. These were tested against samples of Baranow, Bolduc, and McGrath and did not match.

Upon appeal before this court, Myatt's convictions were affirmed. *United States v. Myatt*, 815 F.2d 691 (1st Cir.1987). Approximately six months later, Myatt filed this petition to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255. The district court denied the petition without the benefit of an evidentiary hearing.

Myatt argues that the lower court erred in deciding his motion without a hearing. Therefore, the only relief he seeks from us is a remand for an evidentiary hearing. Petitioners bear the burden of establishing by a preponderance of the evidence before the district court that they are entitled to a hearing. *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir.1978), *cert. denied*, 439 U.S. 834, 99 S.Ct. 115, 58 L.Ed.2d 129 (1979).

To dismiss a § 2255 motion without a hearing, the allegations set forth by the petitioner "must be accepted as true except to the extent they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *United States v. Mosquera*, 845 F.2d 1122, 1124 (1st Cir.1988). According to Rule 4(b) of the Rules Governing Proceedings in U.S. District Courts under 28 U.S.C. § 2255, a hearing need not be held, if, after an examination of the record, transcript, and other relevant papers, "it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief...." Even if a § 2255 motion is facially adequate, a hearing is not necessary before dismissal if the motion is "conclusively refuted as to the alleged facts by the files and records of the case." *Moran v. Hogan*, 494 F.2d 1220, 1222 (1st Cir. 1974). Having enunciated the appropriate standards, we will examine in turn each of the grounds upon which Myatt urged vacation of his conviction and sentence.

## I. *The Photographic Lineups*

■ Myatt first claims that, by nondisclosure of two of the photo arrays as well as details of their use, the government breached its duty under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny, to disclose exculpatory evidence that had been requested from the government. Although the facts concerning the use of these photographic lineups are in dispute, because the record is unclear we take the factual allegations as Myatt has set forth as true.

In his § 2255 motion, Myatt claimed that after he had made a specific request for information concerning these lineups, no array was ever given to him. The record, however, indicates to the contrary that two of the four arrays were disclosed and that the government after reasonable diligence informed Myatt that no further information was available due to the death of the FBI special agent that had prepared the photographs for display. Moreover, Myatt was correctly told that his picture had not been used and that no identifications had been made of the others allegedly involved. Finally, he was given all of this information prior to trial and his counsel was able to completely and competently cross-examine the witnesses who had been shown the lineups about their failure to recognize any of the persons photographed. *See United States v. Del Toro Soto*, 676 F.2d 13, 19 (1st Cir.1982).

It is well-settled that if the government in good faith does not have or is unable to obtain requested information, it will not be held to have breached its duties under *Brady*. *See United States v. Cannington*, 729 F.2d 702, 712 (11th Cir.1984); *United States v. Johnston*, 543 F.2d 55, 57 (8th Cir.1976) (concluding that the government cannot be held to have suppressed evidence that was lost by other officials). Myatt obtained all of the information that the government had and thus the two parties were similarly situated with respect to this information. The government argues that this evidence should not even be considered exculpatory, relying primarily on *United States v. Rhodes*, 569 F.2d 384, 387–88 (5th Cir.), *cert. denied*, 439 U.S. 844, 99 S.Ct. 138, 58 L.Ed.2d 143 (1978), which held that evidence of a witness's failure to identify *defendant* was not obviously exculpatory when perpetrators had been wearing disguises. We need not, however, make that determination. Because additional information about these photographic displays was unavailable due to the unforeseen death of the FBI agent, we affirm the district court's decision with respect to this part of Myatt's petition.

## II. *The FBI Reports*

■ This section of Myatt's petition presents a more difficult argument. Prior to trial, Myatt filed a motion seeking the disclosure of scientific tests conducted by the government. Nevertheless, no disclosures were made, even though tests were conducted on fingerprints, a palm print, and hair samples retrieved in connection with the robbery and reports on these tests were available to the government prior to trial.

In *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the Supreme Court made clear that the rule first enunciated in *Brady* applies to three different situations in which exculpatory evidence, known to the prosecution, is discovered by the defense. The first of these involves instances of perjury by government witnesses, *id.* at 103, 96 S.Ct. at 2397, and thus is inapplicable to this case. In the second instance, counsel for the defense has requested specific evidence that was not delivered. *Id.* at 104–07, 96 S.Ct. at 2397–99. In the third situation, defense counsel has made a general request for all exculpatory, or *Brady*, material. *Id.* at 107, 96 S.Ct. at 2399. In the last two of these examples, the failure to disclose the requested evidence will be considered a violation of the accused's right to a fair trial, mandated by the Due Process Clause, if the evidence was exculpatory and material. "[I]f the subject matter of such a request is material, or indeed if a substantial basis for claiming materiality exists, it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting the problem to the trial judge." *Id.* at 106, 96 S.Ct. at 2398. The definition of materiality changes, however, dependent upon which of the last two examples of *Brady* situation is present.

Taking Myatt's allegations within his § 2255 petition as true, it appears that he had made a specific request for information relating to scientific tests conducted by the government. The Court in *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), defined clearly the standard of materiality to be used in cases such as this. The Court stated that "[t]he evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* at 682, 105 S.Ct. at 3383; *accord Pennsylvania v. Ritchie*, 480 U.S. 39, 57, 107 S.Ct. 989, 1001, 94 L.Ed.2d 40 (1987).

The reports in question indicated that the samples discovered were not those of Baranow, Bolduc, or McGrath. Myatt argues that because of the government's almost exclusive reliance upon the testimony of Richard Bellino, who told of a complicated plot that involved primarily Bolduc and McGrath, evidence of this sort, which, according to Myatt, exculpated Bolduc and McGrath, would raise substantial doubt as to the validity of the rest of his story and thus, Myatt's guilt. "No reasonable juror could entertain a reasonable doubt about McGrath and Bolduc's participation and yet find a way to credit the rest of Richard Bellino's story as to petitioner Myatt." Appellant's Brief at 10. Myatt's primary defense at trial was that Richard made up this story in order to clear himself from other charges and thus, the argument continues, this defense would be bolstered by any evidence contradicting Richard's story.

■ The government asserts that this information was not exculpatory or material because the reports were not about Myatt and because of the other testimony at trial against him. We reject the government's implied argument that evidence cannot be exculpatory unless it is directly about the defendant. It is clear that there will be many cases in which impeachment evidence concerning a witness or co-defendants will lead to reasonable doubt about the defendant's guilt or innocence. Thus, we are faced with the difficult determination of whether the disclosure of these laboratory reports would have created a reasonable probability that the result of this trial would have been different.

Although we appreciate petitioner's argument, after a careful review of the

record in this case, we agree with the lower court's determination. Any evidence *may* affect the outcome of a trial. It is not surprising, however, to learn that fingerprint, palm print, and hair samples retrieved from a busy public place did not match those of Bolduc and McGrath, who were carefully disguised and may have worn gloves. *See United States v. Hemmer*, 729 F.2d 10, 14–15 (1st Cir.) (stating that report which concluded that fingerprints retrieved from stolen money did not match those of *defendant* was not exculpatory), *cert. denied*, 467 U.S. 1218, 104 S.Ct. 2666, 81 L.Ed.2d 371 (1984). This evidence may have had some effect at trial. We cannot conclude, however, that the evidence suppressed would have raised doubts sufficient to undermine confidence in the outcome. Therefore, we find that it was not clearly erroneous for the district court to have decided that the suppressed evidence was not material without the benefit of an evidentiary hearing.

*Affirmed.*