James BARRETT, Petitioner, Appellant,

v.

UNITED STATES of America,
Respondent, Appellee.

No. 91–1568.

United States Court of Appeals,
First Circuit.

Heard Jan. 10, 1992.

Decided June 8, 1992.

Kenneth J. King with whom Fenn & King, Jamaica Plain, was on brief, for petitioner, appellant.

Margaret D. McGaughey, Asst. U.S. Atty., with whom Richard S. Cohen, U.S. Atty., Portland, Me., was on brief, for respondent, appellee.

Before TORRUELLA, Circuit Judge, BOWNES, Senior Circuit Judge, and CYR, Circuit Judge.

CYR, Circuit Judge.

James W. Barrett [hereinafter "petitioner"] appeals the dismissal of a motion to vacate or set aside his conviction and sentence for an armed bank robbery which occurred in Portland, Maine, in 1975. Petitioner asserts four grounds for relief: (1) a Jencks Act claim, *see* 18 U.S.C. § 3500; (2) a *Brady* claim, *see Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); (3) a Sixth Amendment ineffective assistance claim; and (4) an alleged entitlement to a new trial based on newly discovered evidence. We affirm the district court judgment.

## I

## BACKGROUND

Three armed men wearing ski masks robbed the Lunts Corner Branch of the Northeast Bank in Portland, Maine, on October 4, 1975, and made their getaway. At trial, some nine years later, petitioner denied any involvement in the robbery. The chief prosecution witness, Joseph Aceto, testified that he and the petitioner entered the bank with codefendant Raymond Levasseur, while a fourth individual, codefendant Thomas Manning, waited in the getaway car. At the time of petitioner's trial, Levasseur and Manning were fugitives. The trial "ultimately turned on the relative credibility of Aceto and [petitioner]," *United States v. Barrett,* 766 F.2d 609, 612 (1st Cir.), *cert. denied,* 474 U.S. 923, 106 S.Ct. 258, 88 L.Ed.2d 264 (1985),

which is the principal focus of the present appeal as well.[1]

## II

## DISCUSSION

Petitioner challenges the dismissal of the section 2255 petition without an evidentiary hearing. Petitioner was required to demonstrate to the district court, by a preponderance of the evidence, not only an entitlement to section 2255 relief but entitlement to an evidentiary hearing. *Myatt v. United States*, 875 F.2d 8, 11 (1st Cir.1989); *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir.), *cert. denied*, 439 U.S. 834, 99 S.Ct. 115, 58 L.Ed.2d 129 (1978). An evidentiary hearing is not required where the section 2255 petition, any accompanying exhibits, and the record evidence "plainly [reveal] ... that the movant is not entitled to relief...." Rule 4(b), Rules Governing Section 2255 Proceedings. *See Dziurgot v. Luther*, 897 F.2d 1222, 1225 (1st Cir.1990). As we have explained on previous occasions, summary dismissal is appropriate when the section 2255 petition " '(1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case.' " *DiCarlo*, 575 F.2d at 954 (quoting *Moran v. Hogan*, 494 F.2d 1220, 1222 (1st Cir.1974)). Thus, the petition is subject to dismissal, without an evidentiary hearing, if the grounds for relief either are not cognizable under section 2255 or amount to mere "bald" assertions without sufficiently particular and supportive allegations of fact. *Moran*, 494 F.2d at 1222. Alternatively, even a section 2255 petition predicated on specific assertions of fact *allegedly* supported in the record may be dismissed

summarily by the district court since "only [the] district court know[s] definitely, without a hearing, whether the petitioner's facially adequate supporting allegations are in fact untrue," *id.* at 1222 n. 1, and "the district court can often 'test' the adequacy of accompanying factual allegations by assuming *arguendo* their truth, and then assessing their sufficiency in light of the relevant constitutional standards and the record," *id.* at 1222. As we have observed, "if [petitioner's] claim is based upon facts with which the trial court, through review of the record or observation at trial, is familiar, the court may make findings without an additional hearing, and, as is the case for findings of the trial court generally, those findings will not be overturned unless they are clearly erroneous." *Panzardi–Alvarez v. United States*, 879 F.2d 975, 985 n. 8 (1st Cir.1989) (quoting *DiCarlo*, 575 F.2d at 954–55), *cert. denied*, 493 U.S. 1082, 110 S.Ct. 1140, 107 L.Ed.2d 1045 (1990).

### 1. *Jencks Act Claim*

On June 11, 1990, petitioner filed a *pro se* motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. More than five months later, through appointed counsel, petitioner filed an amended habeas petition, alleging, *inter alia*, that the government had suppressed evidence at trial, including a *verbatim* transcript of an interview of Joseph Aceto conducted in Arkansas approximately two months before trial by FBI Agent Crate in the presence of Assistant United States Attorney ("AUSA") Mark Terison, the prosecutor at petitioner's trial.[2] The amended section 2255 petition alleged that

---

1. The district court denied petitioner's post-judgment motions. *See United States v. Barrett*, 598 F.Supp. 469 (D.Me.1984). The conviction was affirmed on direct appeal. *See United States v. Barrett*, 766 F.2d 609 (1st Cir.), *cert. denied*, 474 U.S. 923, 106 S.Ct. 258, 88 L.Ed.2d 264 (1985). The district court opinion dismissing the instant § 2255 motion is reported as well. *See Barrett v. United States*, 763 F.Supp. 658 (D.Me.1991).

2. Before trial, the government agreed to disclose all prior statements of witness Aceto. AUSA Terison represented to the district court that

petitioner's trial counsel had been, or would be, provided "everything [the government has] that's on paper from Mr. Aceto." Rather than providing petitioner's trial counsel with the 72–page *verbatim* Aceto interview transcript, however, the government submitted a redacted summary of the Arkansas interview form "FBI 302." The government does not deny knowledge of the existence of the *verbatim* interview transcript at the time of trial, but bases its decision to redact on security grounds. *See infra* note 13.

the failure to provide the *verbatim* interview transcript violated the government's duty to disclose exculpatory information under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Petitioner demanded an evidentiary hearing and the disqualification of AUSA Terison.

The government responded to the amended habeas petition on January 4, 1991. On February 19, 1991, petitioner filed "Plaintiff's Motion for Leave to File a Brief Reply Memorandum," asserting that "several legal arguments and factual assertions *raised by the government* ... require a response from plaintiff." (emphasis added). The district court granted the motion. Instead of filing a "brief reply memorandum," however, on February 22, 1991, more than eight months after the filing of the original habeas petition, petitioner filed "Plaintiff's Reply to Government's Response to His 28 U.S.C. § 2255 Motion," raising a Jencks Act claim for the first time.[3] The government did not respond to petitioner's Jencks Act claim prior to the district court's denial of habeas relief on April 30, 1991. The district court order dismissed the amended petition, without an evidentiary hearing and without alluding to the Jencks Act claim. *See Barrett v. United States*, 763 F.Supp. 658 (D.Me.1991).

An unsigned and undated motion purportedly submitted by petitioner's counsel was docketed in the district court on May 24, 1991, requesting reconsideration of the April 30 dismissal order on the ground that the district court had not addressed the Jencks Act claim. On May 31, 1991, petitioner filed a notice of appeal from the April 30 dismissal order. On June 6, 1991, petitioner's May 24 motion to reconsider was stricken by the district court, as it was unsigned. *See* Fed.R.Civ.P. 7(b)(3) ("All motions shall be signed in accordance with Rule 11."); Fed.R.Civ.P. 11 ("If a ... motion ... is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the ... movant."); *see also* D.Me.L.R. 1(b), 3(d)(1).[4] Thereafter, petitioner filed two further motions for reconsideration, which the district court denied. We turn to the resultant procedural snarl.

■ Treated as Rule 59(e) motions, all three motions for reconsideration were untimely. *See* Fed.R.Civ.P. 59(e). The ten-day time bar under Rule 59(e) is jurisdictional. *Rivera v. M/T Fossarina*, 840 F.2d 152, 154 (1st Cir.1988) ("ten-day limitation period of Rule 59(e) 'is one of the few limitary periods which the court has no power to enlarge'") (quoting *Scola v. Boat Frances R., Inc.*, 618 F.2d 147, 155 (1st Cir.1980). As the first motion to reconsider the April 30 order was not even submitted until May 24, it was untimely, as were those which followed.[5]

---

3. In his reply brief on appeal, petitioner attempts, likewise for the first time, to characterize the so-called "reply brief" filed in the district court as a "traverse." *See United States v. Benavente Gomez*, 921 F.2d 378, 386 (1st Cir.1990) (arguments not raised in opening appellate brief are waived); *Playboy Enterprises v. Public Service Comm'n*, 906 F.2d 25, 40 (1st Cir.) ("An appellant waives any issue which it does not adequately raise in its initial brief, because in 'preparing briefs and arguments, an appellee is entitled to rely on the content of an appellant's brief for the scope of the issues appealed.'") (quoting *Pignons S.A. de Mecanique v. Polaroid Corp.*, 701 F.2d 1, 3 (1st Cir.1983)) (citations omitted), *cert. denied*, —— U.S. ——, 111 S.Ct. 388, 112 L.Ed.2d 399 (1990).

The Section 2255 rules do not contemplate the filing of a traverse, *see* Rule 5, Rules Governing Section 2255 Proceedings, except in "special circumstances," not present here, where the government's response requests dismissal of the petition pursuant to Rule 9 ("Delayed or Successive Motions"). *See* Advisory Committee Notes to Rule 5, Rules Governing Section 2255 Proceedings; *United States v. Smith*, 869 F.2d 835, 837–38 (5th Cir.1989) ("[t]he rules under § 2255 ... do not permit traverse pleadings unless the government moves for dismissal under Rule 9"). Moreover, petitioner did not request or obtain permission to file a traverse, but a "brief reply memorandum."

4. The Federal Rules of Civil Procedure are applicable to § 2255 proceedings. *See* Fed.R.Civ.P. 1, 81(b); 28 U.S.C. § 2242; *see also* Rule 2(b) & Rule 5 advisory committee's note, Rules Governing § 2255 Proceedings; D.Me. L.R. 13.

5. Moreover, a Rule 59(e) motion must be *served* within ten days. *See* Fed.R.Civ.P. 59(e). The first signed certificate of service reflects that service was not made until June 28. *See Rivera*, 840 F.2d at 155 (movant bears burden of establishing service of Rule 59(e) motion).

■ Alternatively, were we to treat the three motions for reconsideration as having been timely filed under Rule 60(b)(1), *see* Fed.R.Civ.P. 60(b)(1) (motion may be made within a reasonable time, not more than one year), petitioner would fare no better, since the district court orders denying the motions were never appealed.[6]

Furthermore, as a practical matter, petitioner's failure to raise the Jencks Act claim in a timely manner below precludes effective appellate review on the merits. *See Dziurgot*, 897 F.2d at 1224 (claim not raised in § 2255 motion will not be reviewed on appeal); *cf. United States v. Valencia–Copete*, 792 F.2d 4, 5 (1st Cir. 1986) (direct appeal).[7] Additionally, we would note, without deciding, that the Jencks Act claim may not be cognizable under section 2255 in any event, by virtue of the recognized rule that nonconstitutional claims may not be presented in a section 2255 proceeding unless "the claimed error of law [represents] 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Fasano v. Hall*, 615 F.2d 555, 557 (1st Cir.) (quoting *Davis v. United States*, 417 U.S. 333, 345, 94 S.Ct. 2298, 2302, 41 L.Ed.2d 109 (1974)), *cert. denied*, 449 U.S. 867, 101 S.Ct. 201, 66 L.Ed.2d 86 (1980); *see United States v. Addonizio*, 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979) (discussing rationale for restrictions on collateral attacks against criminal convictions); *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir.1981) (§ 2255 proceeding distinguishing between cognizability of "constitutional or jurisdictional errors on the one hand, and mere errors of law on the other," and adverting to *Davis* criteria for identifying "mere errors of law"); *see also Wilson v. United States*, 554 F.2d 893, 894 (8th Cir.) (en banc) (Jencks Act claim not cognizable under § 2255), *cert. denied*, 434 U.S. 849, 98 S.Ct. 158, 54 L.Ed.2d 117 (1977); *Lindhorst v. United States*, 585 F.2d 361, 366 (8th Cir.1978) (same).

### 2. *The Brady Claims*

#### a) Expectations of Lenity

Petitioner asserts that the government suppressed documentary evidence indicating that Aceto may have expected lenient treatment on an Arkansas murder charge in return for testimony against petitioner on the federal charge for armed bank robbery. Petitioner argues that the govern-

---

**6.** As petitioner withdrew the third and final motion for reconsideration, notwithstanding our August 28, 1991 order directing the parties' attention to *Puerto Rico v. SS Zoe Colocotroni*, 601 F.2d 39 (1st Cir.1979) (defining procedure for filing and disposing of a Rule 60(b) motion while an appeal from the underlying judgment is pending in the court of appeals), petitioner plainly waived any claim of error relating to the denial of the motions for reconsideration.

**7.** Since we are unable to conduct effective appellate review without the benefit of the district court's consideration of the Jencks Act claim, if called upon to do so in the future the district court would be required to rule whether petitioner may raise the Jencks Act claim in a successive § 2255 petition. *See* Rule 9(b), Rules Governing Section 2255 Proceedings. The Supreme Court has held that a successive § 2254 petition presenting a ground for relief, not previously raised, is to be given "full consideration [on] the merits ... [unless] there has been an abuse of the writ or motion remedy; and this the Government has the burden of pleading." *Sanders v. United States*, 373 U.S. 1, 17, 83 S.Ct. 1068, 1078, 10 L.Ed.2d 148 (1963) (§ 2254); *see Saville v. United States*, 451 F.2d 649 (1st Cir. 1971) (reversing district court denial of third habeas petition, without evidentiary hearing, where court relied on denials of prior motions, but third petition raised two new constitutional claims); 28 U.S.C. § 2244(b) (successive applications for § 2255 relief "need not be entertained ... unless the application alleges a factual or other ground not adjudicated on the hearing of the earlier application ..., and unless the court ... is satisfied that the applicant has not on the earlier application deliberately withheld the newly asserted ground or otherwise abused the writ"); 8C J. Moore, *Moore's Federal Practice* ¶ 15.07[2] (2d ed. 1992) ("If the section 2255 movant asserts a claim in a successive petition which he failed to assert in a prior section 2255 motion due to his deliberate bypass or inexcusable neglect, he is deemed to have abused the section 2255 remedy under Rule 9(b)."). *But cf. McCleskey v. Zant*, — U.S. —, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991) ("If petitioner cannot show cause, the failure to raise the claim in an earlier petition may nonetheless be excused if he or she can show that a fundamental miscarriage of justice would result from a failure to entertain the claim.") (§ 2254); *Sanders*, 373 U.S. at 15, 83 S.Ct. at 1077 ("successive petition" standard same under § 2254 and § 2255).

ment deprived him of important impeachment evidence against Aceto.

■ Prosecutorial nondisclosure of exculpatory evidence does not assume unconstitutional dimensions unless the undisclosed evidence is "material ... to guilt or to punishment...." *Brady,* 373 U.S. at 87, 83 S.Ct. at 1197. "Since impeachment evidence is 'exculpatory' under *Brady,* ... the question we ask in a prosecutorial nondisclosure setting is 'whether the omitted evidence is of sufficient materiality to call for a new trial.' " *United States v. Sanchez,* 917 F.2d 607, 617 (1st Cir.1990) (quoting *United States v. Imbruglia,* 617 F.2d 1, 4 (1st Cir.1980), *cert. denied,* — U.S. —, 111 S.Ct. 1625, 113 L.Ed.2d 722 (1991)). The materiality test under *Brady* is not met unless the nondisclosure of the evidence "undermine[s] confidence in the outcome of the trial," *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985), which can occur only if "there is a *reasonable probability* that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 682, 105 S.Ct. at 3383 (emphasis added); *Sanchez,* 917 F.2d at 617 (*Bagley* prescribes "uniform standard of materiality for general application in all nondisclosure cases").

■ The district court denied petitioner's initial request to cross-examine Aceto at trial about the pending Arkansas murder indictment, on the ground that there was no sufficient factual basis for finding that the probative value of the *untried* murder indictment would outweigh substantially the severe risk of unfair prejudice.[8] *See* Fed.R.Evid. 608(b)(1) (whether to permit inquiry into specific instance of conduct, other than *conviction* of crime, for purpose of proving witness' truthfulness or untruthfulness, is addressed to "the discretion of the court"); *see also* 3 *Weinstein's Evidence,* ¶ 608[05] (1991) (courts may apply Rule 403 safeguards under Rule 608(b)); Fed.R.Evid. 403 (evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice"). Nevertheless, shortly thereafter, at "considerable expense and trouble to the court and government," *Barrett,* 766 F.2d at 615, the district court recalled Aceto expressly to permit petitioner's trial counsel to demonstrate, on *voir dire,* a reasonable basis for the claim that Aceto expected to "benefit in connection with his ... homicide prosecution as a result of his testimony in [petitioner's] case." Yet, after eliciting the admission that there was a murder indictment pending against Aceto, petitioner's trial counsel "suddenly gave up," *id.,* and abandoned all further interrogation of Aceto on *voir dire.* After several unsuccessful efforts to encourage defense counsel to pursue the inquiry further, the district court excused Aceto.[9] On direct appeal, it was held that petitioner's trial counsel had been given "ample opportunity to make a record from which he could argue that the witness was biased because of a particular hope or expectation," *Barrett,* 766 F.2d at 615 (citing *United States v. Tracey,* 675 F.2d 433, 439 (1st Cir.1982)), but that petitioner had "failed ... to estab-

---

8. At trial, petitioner's counsel established the existence of a 1976 plea agreement in which Aceto agreed to testify on behalf of the government in future criminal trials (including petitioner's trial for armed bank robbery) in return for the government's promise to recommend favorable treatment for Aceto in federal and state criminal proceedings then pending against Aceto. *See Barrett,* 766 F.2d at 613–14 (discussing particulars of Aceto's 1976 plea agreement with the government). Petitioner's later decision to abandon the cross-examination of Aceto on *voir dire* about the 1983 Arkansas murder indictment is not to be confused with petitioner's successful effort to demonstrate to the jury Aceto's potential bias arising out of the 1976 plea agreement. As to the latter, this court noted on direct appeal that petitioner's "Sixth Amendment right was adequately protected and that defense counsel, through extensive cross-examination, fully established the potential bias of Aceto stemming ... from ... his plea agreement...." *Id.* As the district court noted in its opinion dismissing the § 2255 petition, "Aceto was thoroughly impeached [with] ... [t]his [1976] agreement...." *Barrett,* 763 F.Supp. at 663.

9. The court observed:

> I brought this witness back for what you represented to me was a particular purpose and I have afforded you an opportunity to inquire into that purpose and you have elected not to pursue it.

lish ... why inquiry into this most prejudicial matter should be made before the jury." *Id.*

The claim presently before the court closely tracks the claim rejected on direct appeal. We consider whether, but for the government's nondisclosure of the Terison memorandum and the related documents, petitioner would have been allowed to inquire into the Arkansas murder charge at trial and, if so, whether there is. a reasonable probability that the jury would have acquitted petitioner. *Bagley*, 473 U.S. at 678, 105 S.Ct. at 3381. Petitioner relies primarily on a January 24, 1984 file memorandum prepared by AUSA Terison. The Terison memorandum states, in pertinent part:

> On or about January 18, 1984 I talked to Tommy Brown who is a state of Arkansas prosecutor responsible for the murder prosecution of Joseph Aceto.... *Brown also said that his case against Aceto was not a rock solid one and that both he and Aceto may be interested in reaching some sort of plea arrangement whereby Aceto would agree to come to Maine to testify in the Barrett case.*

(Emphasis added).[10]

### (i) *Materiality of Undisclosed Documents*

The present claim must fail unless the Terison memorandum and the related documents, alone or in combination with the evidence admitted at trial, would have facilitated petitioner's *voir dire* examination of Aceto sufficiently to have enabled establishment of the required predicate for a reasonable belief that Aceto expected favorable treatment from the Arkansas prosecutor in return for testimony against petitioner on the federal charge. In other words, the petitioner must demonstrate that the undisclosed documents contained either admissible evidence, or inadmissible information, with which petitioner would have been able to demonstrate to the district court that he was entitled to an evidentiary hearing on the section 2255 petition.[11]

**10.** In addition to the Terison memorandum, petitioner relies on *later* documents, disclosed neither before nor during trial, which show that Brown, the Arkansas prosecutor, cooperated in petitioner's federal prosecution by relaying communications between AUSA Terison and Aceto. These documents provide no independent support for an inference that Aceto harbored any expectation of lenient treatment in return for his testimony against petitioner, beyond whatever basis is indicated in the Terison memorandum. As a matter of fact, these documents would tend to support the inference that Aceto's testimony against petitioner was not linked to any expectation of lenient treatment on the Arkansas murder charge. In one document, for instance, Aceto provides information pertinent to petitioner's upcoming federal trial on the armed bank robbery charge, notwithstanding Aceto's statement that he has rejected a plea agreement relating to the Arkansas murder charge. *See also infra* note 11. Additionally, the affidavit AUSA Terison submitted in the § 2255 proceedings asserts that he is unaware of any inducements to Aceto other than as disclosed at trial, and that neither Terison nor his office took any action to secure favorable treatment for Aceto in connection with the Arkansas murder charge.

**11.** We are satisfied that the Terison memorandum (and related documents), *simpliciter*, would not have been sufficient to establish an evidentiary base for a reasonable inference that Aceto harbored an expectation of leniency on the Arkansas murder charge, since these documents were neither admissible in evidence nor directly probative of Aceto's *expectations*. Moreover, Aceto's actions do not indicate that there was any agreed *quid pro quo* for his testimony against petitioner. In fact, the documents relied upon by petitioner show that Aceto rejected a plea agreement in connection with the Arkansas murder indictment prior to petitioner's trial, but *after* Aceto provided information which assisted the government's prosecution of petitioner. Second, shortly after petitioner's trial ended, Aceto *went to trial* on the Arkansas murder charge. Thus, there is no evidence that Aceto *ever* entered into a plea agreement relating to his testimony against petitioner. Although Aceto's trial resulted in a hung jury and Aceto subsequently pled guilty to the murder charge, the district court supportably found, *see Barrett*, 763 F.Supp. at 661 n. 2, (and petitioner does not challenge on appeal) that the Arkansas guilty plea was in no way connected with Aceto's testimony against petitioner. Finally, petitioner's abandonment of the *voir dire* inquiry into Aceto's expectations for leniency, based exclusively on the pendency of the murder indictment and Aceto's provision of testimony at petitioner's trial, was resolved against petitioner on direct appeal, *Barrett*, 766 F.2d at 615, and cannot be collaterally attacked in these proceedings. *Murchu v. United States*, 926 F.2d 50, 55 (1st Cir.) ("'Issues resolved by a prior appeal

The only portion of the Terison memorandum even arguably probative of Aceto's state of mind—the Arkansas prosecutor's statement to Terison that Aceto might be interested in a plea agreement—would not have been admissible as evidence of the matter asserted, as it constituted compound hearsay; that is, Terison's assertion as to what Brown stated might interest Aceto.[12] At most, as the district court noted, access to the Terison memorandum might have prompted further interrogation of Aceto as to whether the Terison memorandum was based on expressions of interest on the part of Aceto, or only on the hopes of the Arkansas prosecutor. Yet at trial petitioner insistently refused the clear opportunity, indeed the explicit invitation, *see supra* note 9, to interrogate Aceto on *voir dire* concerning any benefit he hoped for, or expected, in return for testimony against petitioner.

The entire purpose of the *voir dire* examination, as all concerned well understood, was to afford petitioner an opportunity to demonstrate a factual predicate for inferring that Aceto expected favorable treatment in connection with the pending murder indictment in return for his testimony against petitioner. On *voir dire*, without the benefit of the Terison memorandum or the related documents, petitioner's trial counsel elicited the information that a murder indictment was pending against Aceto. Nevertheless, despite the fact that the admission of the murder indictment depended upon the establishment of some *evidence* as to Aceto's *state of mind* on the subject, or some other reasonable evidentiary basis for inferring the existence of a connection between Aceto's testimony against petitioner and an expectation, understanding, or agreement concerning lenient treatment on the murder charge, Aceto was "never asked the critical question whether the government had made any agreements with respect to the pending charge or whether Aceto had some hope of leniency with respect thereto." *Barrett,* 766 F.2d at 615. Notwithstanding the district court's earnest efforts, petitioner's trial counsel relinquished the opportunity to examine Aceto concerning any agreement or understandings which may have been reached, or any hopes Aceto may have harbored, in connection with his testimony against petitioner. The government's belated disclosure of the Terison memorandum and the related documents cannot efface petitioner's plain election to abandon any direct inquiry as to Aceto's hopes or expectations for leniency.[13]

will not be reviewed again by way of a 28 U.S.C. § 2255 motion.'") (quoting *Dirring v. United States,* 370 F.2d 862, 864 (1st Cir.1967)), *cert. denied,* — U.S. ——, 112 S.Ct. 99, 116 L.Ed.2d 70 (1991). Accordingly, we turn to consider whether the cumulative effect of the Terison memorandum and related documents would have enabled petitioner to establish an evidentiary base for inferring an expectation of leniency on the part of Aceto, as distinguished from some free-floating hope of benefit which could only have been substantiated through direct inquiry as to Aceto's state of mind.

12. Similarly, the related documents demonstrate an ongoing cooperative relationship between the state and federal prosecutors to arrange Aceto's participation in petitioner's federal trial for armed bank robbery, but contain no representation, hearsay or otherwise, probative of Aceto's *state of mind* relating to any expectation of leniency. *See also supra* notes 10 & 11. The two references to a possible interest in a plea agreement make no connection between a possible plea to the Arkansas murder charge and any·testimony or other assistance in the federal prosecution against petitioner. In a letter to the Arkansas prosecutor, Aceto first indicates that he has already forwarded certain requested information relating to petitioner's federal trial. In the next paragraph, Aceto rejects a plea agreement without linking its rejection in any way to the assistance he was providing to the federal prosecution against petitioner. In another letter, Brown recommends a plea agreement and makes no mention of the federal prosecution. The documents nevertheless demonstrate a factual predicate for inferring that Aceto's testimony at petitioner's trial was facilitated through the cooperation of the Arkansas prosecutor and AUSA Terison, which might have provided encouragement to pursue the *voir dire* examination of Aceto at trial. *See infra* at pp. 1191–1192.

13. In these circumstances we do not think that a criminal defendant who possessed all the information necessary to spur inquiry into the state of mind of the key prosecution witness at trial can decline the opportunity and later rely on speculation and conjecture to demonstrate that cumulative impeachment evidence not available at trial would have resulted in an acquittal. The decision to abandon the *voir dire* examination of Aceto appears to have been tactical. For

The information in the Terison memorandum and the related documents is entirely cumulative of the evidence available to petitioner at *voir dire;* that is, principally, the pending murder indictment and Aceto's appearance as a witness for the prosecution at petitioner's federal trial. At *voir dire,* petitioner knew about the pending murder indictment against Aceto, and petitioner had been provided with the Form 302 interview summary which revealed that a "Thomas Brown, Prosecutor's Office," participated in the Aceto interview. Moreover, the Form 302 provided to petitioner plainly revealed itself as a redacted version of the original Form 302, in that it exhibited a large blank space between Brown's name and the ensuing designation that Brown was a prosecutor—located in the most likely place for a designation of Brown's full title. Yet, despite this information, petitioner's trial counsel never asked Aceto whether Prosecutor Brown had anything to do with the pending murder indictment against Aceto. We believe the record re-veals an abiding tactical reluctance to learn whether the obvious redaction in the Form 302 provided to petitioner was pertinent to his defense.

Petitioner offers no nonspeculative ground whatever for concluding that the undisclosed cumulative evidence would have spurred further inquiry into Aceto's state of mind, let alone a more fruitful inquiry.[14] Accordingly, we conclude that the unavailability of the cumulative impeachment evidence contained in the Terison memorandum, and related documents, did not affect the outcome of the trial. *Bagley,* 473 U.S. at 678, 105 S.Ct. at 3381.[15]

### b) Aceto's Mental State

 Petitioner claims that the government withheld four documents wherein Aceto is diagnosed as a paranoid schizophrenic who was receiving personal messages via radio and television. As the district court stated,[16] and this court observed on direct appeal,[17] an abundance of damn-

---

instance, although petitioner knew of the pending murder indictment, not only was Aceto not asked where the indictment was pending, but no attempt was made to inquire whether Prosecutor Brown, affiliation unspecified, was in any way involved with the pending murder indictment. Although the entire effort to delimit disclosures relating to the indictment was based on the government's concerns for Aceto's personal security, the linking of the pending murder indictment with Prosecutor Brown (and Brown's known participation in Terison's interview of Aceto) would have disclosed the substantial equivalent of all the pertinent information contained in the undisclosed Terison memorandum, and related documents, without posing any additional risk to Aceto's security.

**14.** In addition, of course, through extensive cross-examination at trial "the grounds for bias on the part of Aceto were made very clear to the jury." *Barrett,* 766 F.2d at 615 n. 6. As the district court supportably found, "Aceto was thoroughly impeached by far more substantial means: his mental illness, inconsistencies between trial and previous testimony, his prior criminal behavior, and his [1976] plea agreement with the government." *Barrett,* 763 F.Supp. at 663. *See also infra* note 16.

**15.** Although petitioner argued below that the transcript of the Arkansas interview was *Brady* material, *see Barrett,* 763 F.Supp. at 662–663, on appeal he adverts to the issue in perfunctory fashion only, never identifying it as *Brady* mate-rial, as distinguished from *Jencks Act* material, *see* text *supra* at pp. 1186–1187. We deem any such *Brady* claim to have been waived. *See United States v. Zannino,* 895 F.2d 1, 17 (1st Cir.), *cert. denied,* 494 U.S. 1082, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990). In any event, a careful comparison of the undisclosed *verbatim* transcript with the redacted Form 302 version of the interview and Aceto's trial testimony satisfies us that the claimed inconsistencies were minor and far from sufficient to "undermine confidence in the outcome of the trial." *Bagley,* 473 U.S. at 678, 105 S.Ct. at 3381.

**16.** The district court characterized the trial testimony presented by Aceto's psychiatrist as indicating:

that Aceto was a victim of paranoid schizophrenia and that he was psychotic, delusional and probably paranoid and subject to hallucinations ... [and that] these conditions should be taken to have a severely adverse effect upon the reliability of Mr. Aceto's testimony and ... could well undermine his *ability* to tell the truth.

*Barrett,* 598 F.Supp. at 477 (emphasis in original).

**17.** On direct appeal, this court adverted to the trial evidence that Aceto had been institutionalized three times and, not long before trial, had been prescribed 600 milligrams of Mellaril daily, which dosage often causes "confus[ion between] fact and fantasy." *Barrett,* 766 F.2d at 615–16.

ing impeachment evidence was adduced at trial as to Aceto's mental instability. *See also supra* note 14. Given all the "damaging [trial] evidence concerning Aceto's mental status," *see Barrett,* 766 F.2d at 615–16, we see no reason to disturb the district court finding, *see Barrett,* 763 F.Supp. at 664, that there is no reasonable probability that the cumulative impeachment evidence in these undisclosed diagnoses would have affected the outcome of the trial. *See Bagley,* 473 U.S. at 678, 105 S.Ct. at 3381.

### 3. *Ineffective Assistance Claim*

■ Petitioner claims that trial counsel's representation was so deficient as to amount to a denial of his Sixth Amendment right to the effective assistance of counsel. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In response to an inquiry from counsel, petitioner testified on direct examination that he shot a person in self-defense in 1963 and spent thirteen years in prison before the conviction was vacated. The government responded by introducing the death certificate, which indicated that the victim had been shot in the back.

■ Petitioner must demonstrate that the alleged deficiencies in professional performance assumed unconstitutional dimensions and resulted in prejudice "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. *Strickland* cautions reviewing courts to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ... 'considered to be sound trial strategy ...[,]' " *id.* at 689, 104 S.Ct. at 2065 (quoting *Michel v.*

*Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)), and that "strategic choices made after thorough investigation of law and facts relevant to plausible options are *virtually unchallengeable."* *Id.* at 690, 104 S.Ct. at 2066 (emphasis added). Thus, "a defendant must *allege and demonstrate* that his counsel's error clearly 'resulted from neglect or ignorance rather than from informed, professional judgment.' " *United States v. Bosch,* 584 F.2d 1113, 1121 (1st Cir.1978) (quoting *Marzullo v. Maryland,* 561 F.2d 540, 544 (4th Cir.1977), *cert. denied,* 435 U.S. 1011, 98 S.Ct. 1885, 56 L.Ed.2d 394 (1978)) (emphasis added); *see United States v. Natanel,* 938 F.2d 302, 309 (1st Cir.1991) (citing *Bosch* ) (defendant bears burden of demonstrating deficient performance; performance standard is "to be applied not in hindsight, but based on what the lawyer knew, or should have known, at the time his tactical choices were made and implemented"), *cert. denied,* —— U.S. ——, 112 S.Ct. 986, 117 L.Ed.2d 148 (1992).[18]

■ We note at the outset that petitioner does not advance the contention that counsel's trial strategy resulted from any failure to conduct a "thorough investigation of law and facts," *see Strickland,* 466 U.S. at 690, 104 S.Ct. at 2064, but merely that introduction of petitioner's self-defense testimony was not a "plausible option." *Id.* Petitioner's failure to *allege, see Bosch,* 584 F.2d at 1121, let alone demonstrate, *see id.,* that counsel's tactical decision "resulted from neglect or ignorance," *id.,* effectively insulates counsel's choice among plausible options from successful collateral challenge in the present

---

**18.** Inasmuch as trial counsel's effort to elicit that petitioner had acted in self-defense opened the door to the introduction of the death certificate, petitioner contends that counsel need merely have elicited testimony that petitioner had served 13 years in prison by the time his 1963 murder conviction was vacated. Petitioner latches on to language in the opinion affirming his conviction on direct appeal.

We may question whether such detail was necessary in order either to explain his being in prison or to make his point that he "was wrongfully incarcerated for 13 years, had no

faith in the system, and therefore took to cover when Aceto implicated him." *The simple facts that he was convicted and served 13 years, and that his conviction was finally overturned would seem to serve both purposes sufficiently.*
*Barrett,* 766 F.2d at 619 (emphasis added). However, even though we may *question* informed trial counsel's tactical decisions, we may not find a deficient professional performance in the constitutional sense unless the challenged decisions were not "plausible options." *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066.

**1194**

circumstances. *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066.

As noted on direct appeal, *see Barrett,* 766 F.2d at 618, trial counsel advanced two reasons for inquiring into petitioner's 1963 murder conviction, and both were plausible. The principal aim of the self-defense initiative was to establish that petitioner's fugitive status following the armed bank robbery for which he was on trial "was not, as the government would have it, [evidence of petitioner's] guilt, but . . . of [petitioner's] lack of faith in the justice system." *Id.* The second purpose, as articulated by the district court and acknowledged by defense counsel, was to establish petitioner's credibility as a witness and "explain[ ] the fact that he was previously in prison." *Id.* Thus, as the district court ruled, the decision to apprise the jury of the petitioner's invalid murder conviction rather clearly represented a calculated defense tactic. The district court explained:

> The Court cannot find that counsel's decision to *introduce* the self-defense issue was constitutionally unreasonable. Petitioner concedes that the decision was tactical. . . . [c]ounsel could well have decided that *the jury would be more sympa-*

*thetic* to Petitioner *if it heard the details* of the killing *from him.* Such a decision is indeed strategic and, in the context of this most thoroughly-prepared trial, unchallengeable.

*Barrett,* 763 F.Supp. at 664–65 (emphasis added). Therefore, we cannot conclude that counsel's decision to pursue this strategic initiative amounted to ineffective assistance.[19]

**4.** *Newly Discovered Evidence*

Finally, petitioner points to newly discovered evidence as grounds for an evidentiary hearing and a new trial. Codefendants Thomas Manning and Raymond Levasseur, unavailable at the time of petitioner's trial, submitted substantively identical affidavits which flatly attest: I did not rob the Northeast Bank in Portland, Maine with James Barrett.

We need not determine whether newly discovered evidence is a cognizable ground for obtaining a new trial in proceedings under section 2255,[20] since the present claim cannot succeed in any event. At a minimum, petitioner would be required to meet the conventional criteria for obtaining a new trial on the ground of newly discovered evidence. *Cruz–Sanchez v. Rivera–*

---

**19.** Petitioner adverts to trial counsel's failure to offer Evidence Rule 106 as a basis for introducing transcripts of petitioner's 1963 murder trial to rebut the impact of the death certificate. Since petitioner merely adverts to the claim in a perfunctory fashion in a footnote, and without "developed argumentation," the claim is deemed waived. *See United States v. Zannino,* 895 F.2d 1, 17 (1st Cir.) (noting "settled appellate rule" that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"), *cert. denied,* 494 U.S. 1082, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990). Moreover, the claim is not only problematic on the merits, but the decision not to *emphasize* the conflict in *evidence which resulted in a jury verdict against petitioner* at the original trial, certainly cannot be second-guessed on collateral review as an implausible tactical option.

The district court excluded the rebuttal evidence on the ground that the transcripts amounted to inadmissible hearsay. *See* Fed. R.Evid. 804(b)(1). Although we need not resolve the matter now, we do note that there is considerable disagreement whether Fed.R.Evid. 106 can ever serve as a basis for admitting evidence which is inadmissible on other

grounds. *Compare* 1 J. Weinstein & M. Bergher, *Weinstein's Evidence,* ¶ 106[02] (Rule 106 "covers an order of proof problem; it is not designed to make something admissible that should be excluded"); *United States v. Costner,* 684 F.2d 370, 373 (6th Cir.1982) (same); *United States v. Burreson,* 643 F.2d 1344, 1349 (9th Cir.) (same), *cert. denied,* 454 U.S. 830, 102 S.Ct. 125, 70 L.Ed.2d 106, *and cert. denied,* 454 U.S. 847, 102 S.Ct. 165, 70 L.Ed.2d 135 (1981), *with* 21 Charles A. Wright & Kenneth W. Graham, *Federal Practice and Procedure,* §§ 5072, 5078 (Rule 106 can fulfill its function adequately only if otherwise inadmissible evidence can be admitted under the rule); *United States v. Sutton,* 801 F.2d 1346, 1368–69 (D.C.Cir.1986) (same).

**20.** *See Cruz–Sanchez v. Rivera–Cordero,* 835 F.2d 947, 948–49 (1st Cir.1987) ("it is not even clear that newly discovered evidence is a ground for section 2255 relief"); *Pelegrina v. United States,* 601 F.2d 18, 19 (1st Cir.1979) (declining to decide whether newly discovered evidence is ground for § 2255 relief). *But cf. Grace v. Butterworth,* 586 F.2d 878, 880 (1st Cir.1978) ("It may be assumed that a compelling claim for relief might be presented when newly available evidence conclusively shows that a vital mistake had been made.").

*Cordero,* 835 F.2d 947, 948 (1st Cir.1987); *see Lindhorst v. United States,* 658 F.2d 598, 602 (8th Cir.1981) (request for § 2255 relief based on newly discovered evidence reviewable under standards applicable to motion for new trial under Fed.R.Crim.P. 33), *cert. denied,* 454 U.S. 1153, 102 S.Ct. 1024, 71 L.Ed.2d 309 (1982). Thus, petitioner must show, among other things, that "the new evidence is material and is not merely cumulative or *impeaching....*" *United States v. Benavente–Gomez,* 921 F.2d 378, 382 (1st Cir.1990) (emphasis added); *United States v. Martin,* 815 F.2d 818, 824 (1st Cir.), *cert. denied,* 484 U.S. 825, 108 S.Ct. 89, 98 L.Ed.2d 51 (1987); *see United States v. Rodriguez,* 738 F.2d 13, 18 (1st Cir.1984) (on motion for new trial, "[i]mpeachment evidence is presumptively immaterial"); *Pelegrina v. United States,* 601 F.2d 18, 21 (1st Cir.1979) ("impeaching evidence is generally treated as immaterial" on motion for new trial); *United States v. Bonadonna,* 775 F.2d 949, 957 (8th Cir. 1985) ("newly discovered evidence which is merely impeaching normally cannot form the basis for a new trial"); *see generally* 3 Charles A. Wright, *Federal Practice and Procedure* § 557 (1982). Since it does not bear directly on the defendant's guilt or innocence, "impeachment evidence ... [does] not rise to the level of materiality that would be likely to cause a different result at a new trial." *Benavente–Gomez,* 921 F.2d at 383.

▆▆ The district court summarily may dismiss a section 2255 motion, without an evidentiary hearing, if its claims are inadequate on their face. *DiCarlo,* 575 F.2d at 974. Therefore, plenary presentation is not required unless the motion "contain[s] assertions of fact *that a petitioner is in a position to establish by competent evidence.*" *United States v. Aiello,* 814 F.2d 109, 113 (2d Cir.1987) (emphasis added); *see Dalli v. United States,* 491 F.2d 758, 760 (2d Cir.1974) (appellate court views summary dismissal with disfavor if motion was supported by "a *sufficient* affidavit") (emphasis in original); *cf. Machibroda v. United States,* 368 U.S. 487, 495–96, 82 S.Ct. 510, 514–15, 7 L.Ed.2d 473 (1962) (hearing required where it appears reasonably likely

that *evidence exists* which could either corroborate or disprove material allegations supported by affidavits). Thus, the threshold issue is "whether, if the evidence should be offered at a hearing, it would be *admissible* proof entitling the petitioner to relief." *Dalli,* 491 F.2d at 760 (emphasis added).

Assuming their truth, *see Myatt,* 875 F.2d at 11, these affidavits assert merely that Manning and Levasseur did not rob the Northeast Bank with Barrett. For the testimony to be admissible in evidence, the putative witness must be shown to have sufficient personal knowledge of the matter at issue. *See* Fed.R.Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); Fed.R.Evid. 104(b); *see United States v. Doe,* 960 F.2d 221, 223 (1st Cir.1992) (evidence inadmissible unless " 'a reasonable trier of fact could believe the witness had personal knowledge' ") (quoting *Folio Impressions, Inc. v. Byer California,* 937 F.2d 759, 764 (2d Cir.1991)); *United States v. Sorrentino,* 726 F.2d 876, 887 (1st Cir.1984) (affirming district court's exclusion of testimony because witness lacked personal knowledge concerning subject of testimony); *cf.* Fed. R.Civ.P. 56(e) (for summary judgment purposes, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and *shall show affirmatively that the affiant is competent to testify to the matters stated therein*") (emphasis added); Fed.R.Civ.P. 81(a)(2) (Civil Rules applicable in habeas corpus proceedings where practice is not otherwise dictated by statute).

These affidavits present no foundational facts as to the affiants' personal knowledge. The affidavits assert neither that the affiants were present at the time of the robbery, nor that they were elsewhere with Barrett at the time of the robbery. Although the affidavits state categorically that *the affiants did not participate* in the bank robbery *with petitioner,* the affiants do not represent that petitioner did not participate in the bank robbery with others.

Thus, their statements do not bear directly on petitioner's guilt or innocence, but instead constitute cumulative impeachment evidence against Aceto, who testified that Levasseur and Manning, as well as Aceto and the petitioner, robbed the bank. Since petitioner did not demonstrate that the newly discovered evidence would have been admissible at trial, either as alibi evidence or as evidence of the identification of the participants in the bank robbery, neither an evidentiary hearing nor a new trial was warranted. *See Dalli,* 491 F.2d at 761 (no evidentiary hearing warranted where petitioner did not demonstrate that allegations could be "establish[ed] by competent evidence"). Accordingly, the "newly discovered evidence" warranted neither an evidentiary hearing nor a new trial. *See Benavente Gomez,* 921 F.2d at 382; *Martin,* 815 F.2d at 824.

As the district court correctly concluded that petitioner was entitled to no relief, the judgment must be affirmed.

*Affirmed.*